RECORD NOS. 14-1778(L); 14-2132

In The

# United States Court of Appeals

## For The Fourth Circuit

# TOMMY DAVIS CONSTRUCTION, INC.,

*Plaintiff – Appellee*,

**v.**

# CAPE FEAR PUBLIC UTILITY AUTHORITY; NEW HANOVER COUNTY,

*Defendants – Appellants*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT WILMINGTON**

_____

**BRIEF OF APPELLANTS**

_____

Jeremy M. Wilson
Ryal W. Tayloe
WARD & SMITH, PA
Post Office Box 7068
Wilmington, North Carolina 28406
(910) 794-4800

*Counsel for Appellants*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1778__   Caption: __Tommy Davis Construction v. Cape Fear Public, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__New Hanover County__
(name of party/amicus)

_____

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations? ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/Jeremy M. Wilson                Date:    August 18, 2014

Counsel for: Appellant

## CERTIFICATE OF SERVICE
**************************

I certify that on ___August 18, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley A. Coxe
Hodges & Coxe, PC
3907-100 Wrightsville Avenue
Wilmington, NC  28403
Telephone: (910) 772-1678
Facsimile: (910) 799-7119

/s/Jeremy M. Wilson                        August 18, 2014
(signature)                                        (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1778__     Caption: __Tommy Davis Construction v. Cape Fear Public, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Cape Fear Public Utility Authority__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                      ☐ YES ☑ NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/Jeremy M. Wilson          Date:    August 18, 2014

Counsel for: Appellant

## CERTIFICATE OF SERVICE
****************************

I certify that on    August 18, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Bradley A. Coxe
Hodges & Coxe, PC
3907-100 Wrightsville Avenue
Wilmington, NC  28403
Telephone: (910) 772-1678
Facsimile: (910) 799-7119

/s/Jeremy M. Wilson                          August 18, 2014
(signature)                                        (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................v

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION .............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................2

STATEMENT OF THE CASE...............................................................3

    I.      PROCEDURAL HISTORY ....................................................3

    II.     STATEMENT OF FACTS.....................................................4

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT .......................................................................................13

    I.      STANDARD OF REVIEW ..................................................13

          A.    Granting Of Summary Judgment—De Novo ...........13

          B.    Award Of Attorneys' Fees—Abuse Of Discretion...................13

    II.     THE DISTRICT COURT ERRED WHEN IT GRANTED
           PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
           AND DENIED DEFENDANTS' MOTION FOR SUMMARY
           JUDGMENT BECAUSE PLAINTIFF'S CLAIMS ARE
           BARRED BY THE APPLICABLE STATUTES OF
           LIMITATION AND THE DOCTRINE OF LACHES......................14

          A.    Statutes Of Limitation..............................................14

                1.    Introduction....................................................14

2.     Plaintiff's First and Fourth Claims Are Barred by the Three-Year Limitation Period Found in § 1-52(2) of the North Carolina General Statutes as a "Liability Created by Statute" .........................................15

3.     Plaintiff's Second and Third Claims Are Barred by the Three-Year Limitation Period Found in N.C. Gen. Stat. § 1-52(5). ......................................................22

4.     In the Alternative, Plaintiff's First and Fourth Claims Are Barred by Either the Three-Year Limitation Period Found in § 1-52(5) or the Two-Year Limitation Period Found in § 1-53(1) ..........23

5.     The Ten-Year Limitation Period Found in § 1-56 Does Not Apply to this Case ..........................................24

6.     Summary ..........................................................................26

B.     Laches ......................................................................................27

III.    THE DISTRICT COURT ERRED WHEN IT GRANTED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENIED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE NHCWSD'S ACTIONS WERE AUTHORIZED BY STATUTE AND BY LOCAL ORDINANCE ......................................................................31

A.     Statutory Authorization.............................................32

B.     Local Ordinances ....................................................38

C.     Defendants Have The Ability To Provide Services To Becker Woods ..........................................................39

D.     Summary ..................................................................41

IV.    THE DISTRICT COURT ERRED WHEN IT AWARDED
       ATTORNEYS' FEES AND NONTAXABLE COSTS TO
       PLAINTIFF ............................................................................41

       A.    Introduction ...............................................................41

       B.    Plaintiff's Claims Are Barred By The Applicable Statutes
             Of Limitation..............................................................42

       C.    Defendants' Actions In Assessing Impact Fees Were In
             Accordance With State Statutes And Local Ordinances
             And Were Not Ultra Vires ........................................43

       D.    Section 6-21.7 Of The North Carolina General Statutes,
             The Legal Authority Relied Upon By The District Court,
             Does Not Authorize An Award Of Attorneys' Fees And
             Nontaxable Costs Where The Entity Responsible For The
             Conduct Is Not A "City Or County".........................45

CONCLUSION .......................................................................................47

STATEMENT REGARDING ORAL ARGUMENT ............................................47

ADDENDUM:

       New Hanover County Code of Ordinances § 15-121(b).......................Add. 1

       New Hanover County Code of Ordinances § 15-124(d).......................Add. 2

       New Hanover County Code of Ordinances § 56-312......................... Add. 3-4

       New Hanover County Code of Ordinances § 56-315......................... Add. 5-6

       N.C. Gen. Stat. § 1-52 ..................................................... Add. 7-9

       N.C. Gen. Stat. § 1-53 ..................................................... Add. 10-11

       N.C. Gen. Stat. § 6-21.7 ...................................................Add. 12

       N.C. Gen. Stat. § 153A-276................................................Add. 13

N.C. Gen. Stat. § 162A-9................................................................ Add. 14-16

N.C. Gen. Stat. § 162A-88...............................................................Add. 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Amward Homes, Inc. v. Town of Cary,
   206 N.C. App. 38, 698 S.E.2d 404 (2010) ........................................24, 25, 26

Bd. of Regents of Univ. of State of New York v. Tomanio,
   446 U.S. 478 (1980)..........................................................................................22

Builders Supplies Co. of Goldsboro, N.C., Inc. v. Gainey,
   282 N.C. 261, 192 S.E.2d 449 (1972) ......................................... 12, 29-30, 42

Cannon v. City of Durham,
   120 N.C. App. 612, 463 S.E.2d 272 (1995) ...........................................27, 29

Chen v. VPT, Inc.,
   No. 7:08-CV-00419, 2008 WL 4693556 (W.D. Va. Oct. 24, 2008)............27

Cornett v. Weisenburger,
   454 F. Supp. 2d 544 (W.D. Va. 2006)..........................................................14

Etheridge v. Cnty. of Currituck,
   762 S.E.2d 289 (N.C. Ct. App. 2014)............................................................13

Fulmore v. City of Greensboro,
   834 F. Supp. 2d 396 (M.D.N.C. 2011) .........................................................27

Hicks v. Wake Cnty. Bd. of Educ.,
   187 N.C. App. 485, 653 S.E.2d 236 (2007) ..................................................17

Hous. Auth. of City of Wilmington v. Johnson,
   261 N.C. 76, 134 S.E.2d 121 (1964) .............................................................46

Housecalls Home Health Care, Inc. v. State,
Dep't of Health & Human Servs.,
   200 N.C. App. 66, 682 S.E.2d 741 (2009) ....................................................22

Howard Jarvis Taxpayers Ass'n v. City of La Habra,
        23 P.3d 601 (Cal. 2001)....................................................................18

Kenai Peninsula Borough v. Port Graham Corp.,
        871 P.2d 1135 (Alaska 1994) ......................................................18

Lee v. Wake Cnty.,
        165 N.C. App. 154, 598 S.E.2d 427 (2004) ................................31

Liner v. DiCresce,
        905 F. Supp. 280 (M.D.N.C. 1994) ..............................................14

McNeill v. Harnett Cnty.,
        327 N.C. 552, 398 S.E.2d 475 (1990) ...............................33, 34, 35

Miller v. Fed. Deposit Ins. Corp.,
        906 F.2d 972 (4th Cir. 1990) ........................................................13

Morley v. N.C. Dep't of Health & Human Servs./Broughton Hosp.,
        171 F. Supp. 2d 585 (W.D.N.C. 2001)...................................22, 42

Morrison-Tiffin v. Hampton,
        117 N.C. App. 494, 451 S.E.2d 650 (1995) ................................22

Myers v. Town of Plymouth,
        135 N.C. App. 707, 522 S.E.2d 122 (1999) ................................31

Nat'l R.R. Passenger Corp. v. Morgan,
        536 U.S. 101 (2002)......................................................................27

Save Our Schools of Bladen Cnty., Inc. v. Bladen Cnty. Bd. of Educ.,
        140 N.C. App. 233, 535 S.E.2d 906 (2000) ...........................28, 29

Shepard v. Ocwen Fed. Bank, FSB,
        361 N.C. 137, 638 S.E.2d 197 (2006) .........................................14

South Shell Inv. v. Town of Wrightsville Beach,
        703 F. Supp. 1192, aff'd, 900 F.2d 255 (E.D.N.C. 1988)......................26, 35

<u>Staley v. Lingerfelt</u>,
    134 N.C. App. 294, 517 S.E.2d 392 (1999) ...............................................22, 42

<u>State ex rel. Long v. Custard</u>,
    2007 WL 2570241 (N.C. Bus. Ct. Aug. 8, 2007)...................................17, 18

<u>Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.</u>,
    188 N.C. App. 454, 655 S.E.2d 850 (2008) ............................................16, 17

<u>Taylor v. City of Raleigh</u>,
    22 N.C. App. 259, 206 S.E.2d 401, <u>aff'd</u>,
    290 N.C. 608, 227 S.E.2d 576 (1974) ...............................................27, 28, 29

<u>Teachey v. Gurley</u>,
    214 N.C. 288, 199 S.E. 83 (1938) ..........................................................29

<u>Town of Morganton v. Avery</u>,
    179 N.C. 551, 103 S.E. 138 (1920) ..................................................15, 16, 20

<u>Union Land Owners Ass'n v. Cnty. of Union</u>,
    201 N.C. App. 374, 689 S.E.2d 504 (2009) ..................................................24

<u>Wilson v. McLeod Oil Co., Inc.</u>,
    327 N.C. 491, 398 S.E.2d 586 (1990) ........................................................16

## CONSTITUTIONAL PROVISIONS

N.C. CONST. art. I, § 19.................................................................................22

U.S. CONST. amend. XIV .............................................................................22

## STATUTES

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1331 ..........................................................................................2

28 U.S.C. § 1441 ..........................................................................................1

N.C. Gen. Stat. § 1-14..................................................................................25

N.C. Gen. Stat. § 1-52 ................................................................22

N.C. Gen. Stat. § 1-52(2) ......................................................passim

N.C. Gen. Stat. § 1-52(5) ......................................................passim

N.C. Gen. Stat. § 1-53(1) ..........................................11, 23, 42

N.C. Gen. Stat. § 1-55 ................................................................25

N.C. Gen. Stat. § 1-56 ........................................................24, 25

N.C. Gen. Stat. § 6-21.7 .......................................................passim

N.C. Gen. Stat. § 55-8-30 ..........................................................17

N.C. Gen. Stat. § 55-8-42 ..........................................................17

N.C. Gen. Stat. § 115C-238.29H(b) .................................... 16-17

N.C. Gen. Stat. § 115C-325(c)(2) .............................................17

N.C. Gen. Stat. § 143-215.93 ....................................................16

N.C. Gen. Stat. § 153A-274 ...............................................34, 44

N.C. Gen. Stat. § 153A-276 ...............................................passim

N.C. Gen. Stat. § 153A-324 .............................15, 19, 20, 21

N.C. Gen. Stat. § 153A-4 ...........................................................31

N.C. Gen. Stat. § 160A-1 ...........................................................46

N.C. Gen. Stat. § 162A-9 .............................12, 19, 33, 44

N.C. Gen. Stat. § 162A-9(a) ......................................................26

N.C. Gen. Stat. § 162A-88 ..................................................passim

N.C. Gen. Stat. Chapter 162A.................................................................19, 21, 41

N.C. Gen. Stat. Chapter 162A, Article 1 ......................................................<u>passim</u>

N.C. Gen. Stat. Chapter 162A, Article 6 ......................................................<u>passim</u>

N.C. Gen. Stat. Chapter I, Article 5 ....................................................................25

Tex. Loc. Gov't Code Ann. § 395.025 ..................................................................37

Wisc. Stat. § 66.0617(9) .......................................................................................36

**OTHER AUTHORITIES**

New Hanover County Board of Commissioners Minutes at 74 (July 20, 1987), http://laserfiche.nhcgov.com/weblink8/0/doc/47733/ Page1.aspx.................6

New Hanover County Code of Ordinances § 15-121(b) ........................6, 12, 38, 44

New Hanover County Code of Ordinances § 15-124(d) ........................6, 12, 38, 44

New Hanover County Code of Ordinances § 56-312....................................6, 38, 45

New Hanover County Code of Ordinances § 56-315....................................6, 38, 45

Shadi Eskaf & Chris Nida, "Tap Fees and System Development Charges for Residential Water and Wastewater Connection in North Carolina as of January 2009" (May 5, 2009), http://www.efc.sog.unc.edu/reslib/item/tap-fees-and-system-development-charges-residential-water-and-wastewater-connections........................................................................................................34, 36

RECORD NOS. 14-1778 (L), 14-2132

=========================================================

In the
**UNITED STATES COURT OF APPEALS**
for the Fourth Circuit

**TOMMY DAVIS CONSTRUCTION INC.**

*Plaintiff – Appellee*

v.

**CAPE FEAR PUBLIC UTILITY AUTHORITY**
**and**
**NEW HANOVER COUNTY**

*Defendants – Appellants*

_____

**BRIEF OF APPELLANTS**
_____


To the Honorable Judges of the United States Court of Appeals for the

Fourth Circuit:

**STATEMENT OF SUBJECT MATTER**
**AND APPELLATE JURISDICTION**

This case was removed from the Superior Court of New Hanover County,

North Carolina, to the United States District Court for the Eastern District of North

Carolina pursuant to 28 U.S.C. § 1441 based upon the federal constitutional claims

of substantive due process and equal protection. The District Court had

jurisdiction over this case under 28 U.S.C. § 1331. Appellate jurisdiction is

founded upon 28 U.S.C. § 1291 as this matter involves a final decision of the

District Court granting Plaintiff's Motion for Summary Judgment and denying

Defendants' Motion for Summary Judgment, entered July 8, 2014 ("Summary

Judgment Order"), and a final decision of the District Court granting Plaintiff's

"Motion for Attorney Fees and Nontaxable Costs," entered October 2, 2014

("Attorneys' Fees Order"). Defendants' Notice of Appeal from the Summary

Judgment Order was timely filed August 5, 2014, and Defendants' Notice of

Appeal from the Attorneys' Fees Order was timely filed October 20, 2014.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Whether the District Court erred in granting Plaintiff's Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment, on the grounds that Plaintiff's claims are barred by the applicable statutes of limitation and by the doctrine of laches.

II.   Whether the District Court erred in granting Plaintiff's Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment, on the ground that Defendants' actions in assessing impact fees were in accordance with state statutes and local ordinances, and were not <u>ultra vires</u>.

III.  Whether the District Court erred in awarding attorneys' fees and nontaxable costs to Plaintiff, on the grounds that Plaintiff's claims are barred by the applicable statutes of limitation and by the doctrine of laches.

IV.   Whether the District Court erred in awarding attorneys' fees and nontaxable costs to Plaintiff, on the grounds that Defendants' actions in assessing impact fees were in accordance with state statutes and local ordinances, and were not <u>ultra vires</u>.

2

V.    Whether the District Court erred in awarding attorneys' fees and nontaxable costs to Plaintiff, on the grounds that the legal authority relied upon, § 6-21.7 of the North Carolina General Statutes, does not authorize such an award where the entity responsible for the conduct at issue is not a "city or county."

## STATEMENT OF THE CASE

## I.    PROCEDURAL HISTORY

Plaintiff brought suit in the Superior Court of New Hanover County, North Carolina, on December 2, 2011, against Defendant Cape Fear Public Utility Authority ("CFPUA"), alleging a state-law claim that Defendants' actions were ultra vires, and constitutional claims of violations of substantive due process and equal protection.  [Complaint, pp. 1–7.]  Plaintiff amended its Complaint on December 4, 2012 to include Defendant New Hanover County.  [JA 14–21.]  On January 3, 2013, Defendant New Hanover County removed the case to the United States District Court for the Eastern District of North Carolina.  [JA 10–13.] Plaintiff alleges that impact fees charged by CFPUA's predecessor in interest were not authorized by statute and local ordinance and, therefore, were ultra vires, and that they infringed upon Plaintiff's constitutional rights to due process and equal protection.  [JA 14–21.]

On September 26 and 30, 2013, Plaintiff and Defendants, respectively, moved for summary judgment.  [JA 41–46.]  On July 8, 2014, the District Court entered an Order granting Plaintiff's Motion for Summary Judgment and denying

Defendants' Motion for Summary Judgment.  [JA 51–62.]  On August 5, 2014,

Defendants filed their Notice of Appeal from that Order.  [JA 106–07.]

On July 11, 2014, Plaintiff filed a "Motion for Attorney Fees and

Nontaxable Costs."  [JA 64–67.]  On October 2, 2014, the District Court entered an

Order partially awarding Plaintiff attorneys' fees and costs.  [JA 108–11.]  On

October 20, 2014, Defendants filed their Notice of Appeal from that Order.

[JA 113–15.]

By Order filed October 21, 2014, this Court consolidated the two appeals.

## II.    STATEMENT OF FACTS

This appeal involves impact fees charged by CFPUA's predecessor in

interest, New Hanover County Water and Sewer District ("NHCWSD").  In its

Amended Complaint, Plaintiff alleges that these fees were not authorized by statute

and local ordinance (that is, were ultra vires) and were unconstitutional.

[JA 14-21.]  Defendants, on the other hand, argue that the fees were authorized

both by statute and by local ordinance and, in any event, Plaintiff's claims are

barred by the applicable statutes of limitation and the doctrine of laches.  [JA 25,

37.]

Plaintiff is a North Carolina corporation in the business of building

residential homes.  [JA 14, 375–76.]  It developed Becker Woods at The Cape

("Becker Woods"), a residential subdivision located in the southern part of New

Hanover County, North Carolina ("County"), outside the incorporated areas of the City of Wilmington ("City"). [JA 14.]

Defendant CFPUA is a water and sewer authority created pursuant to Chapter 162A, Article 1, of the North Carolina General Statutes. [JA 14, 22, 29–30, 361, 1348.] It provides water and sewer services in the County and the City. [JA 361, 1348.] CFPUA was created in June 2007 when the County and City governments consolidated their independent water and sewer systems, and it began operating in 2008. [JA 15, 22, 361, 1401–06.] Although CFPUA is authorized to provide services throughout the County, portions of the County are served by private water and sewer companies or wells and septic systems. [JA 361.] Becker Woods received water and sewer services from Aqua North Carolina Inc. ("Aqua"). [JA 412–16, 1297, 1312.]

Prior to the existence of CFPUA, the County had created NHCWSD in 1983 pursuant to Chapter 162A, Article 6, of the North Carolina General Statutes. [JA 15, 23, 518–20.] NHCWSD provided water and sewer services in the unincorporated areas of the County, including the Becker Woods area. [JA 518–20.] The County enacted various ordinances applicable to those properties within NHCWSD's jurisdiction. In 1987, the County first enacted an ordinance requiring payment of impact fees at the time of building permit application for properties throughout the jurisdiction, regardless of whether immediate connection to the

5

system would occur.  The relevant Sewer Ordinance revisions are reflected in the June 15, 1987 and July 20, 1987 minutes of the regular meeting of the Board of County Commissioners, which are publically available.  These documents—as well as future meeting minutes considering the County impact fee policy—make clear that sewer impact fees were collected for services "to be furnished" by NHCWSD throughout the jurisdiction.  The meeting minutes from July 20, 1987, for instance, state that "the impact/facilities fee was developed due to tremendous growth in this area and the need for additional funds to construct and expand treatment plants prior to additional connections."[1]

Sections 15-124(d) and 15-121(b) of the New Hanover County Code of Ordinances provided for payment of a "treatment plant capacity fee (impact fee)" for new development.  [JA 521–22.]  In December 1995, the County Board of Commissioners amended the impact fee Ordinance and renamed the impact fee a "facility fee."[2]  [JA 523–24.]  The Ordinance required builders and developers to pay a facility fee for residential units, due at the time they applied for their building permit.  [JA 523.]  This basic structure for facility fee (impact fee) charges continued in later versions of the Ordinance, including when the referenced sections later were renumbered as § 56-312 and § 56-315.  [JA 292–93, 294–95.]

---

[1]  See Minutes of the New Hanover County Board of Commissioners at 74 (July 20, 1987), http://laserfiche.nhcgov.com/weblink8/0/doc/47733/Page1.aspx.
[2]  The term "impact fee" will be used throughout this Brief to designate these fees.

During the times at issue in this lawsuit, impact fees were required for "all new development" within NHCWSD's jurisdiction, while other charges—particularly "sewer service connection fees (tap fees)"—were, in contrast, due only when actual connection to water or sewer services occurred.  [JA 292–93, 294–95, 523–24.]

Plaintiff began development of Becker Woods in 2004.  [JA 375–76.]  As part of this process, Plaintiff submitted various New Hanover County Building Permit Applications.  [JA 525–602.]  At the time Plaintiff applied for a building permit, the County issued Engineering Fee Sheets which contained charges for impact fees for each applicable property pursuant to the County Ordinances. [JA 525–602.]  Plaintiff initially disputed these impact fees, arguing that the Becker Woods properties were to be connected to the Aqua wastewater system. [JA 412–16.]  However, Plaintiff eventually paid the impact fees, received its building permits, and proceeded to develop Becker Woods.

NHCWSD and its successor, CFPUA, used the impact fees paid by Plaintiff and other developers to expand their wastewater infrastructure, with the goal of providing expanded service coverage in the unincorporated areas of the County, including Becker Woods.  [JA 362.]  As early as 1976, the Greater Wilmington Area 201 Facilities Plan ("Facilities Plan") [JA 1411–45] (jointly produced by the County, the City, and the Town of Wrightsville Beach) included the southern

unincorporated areas of the County in its Regional Wastewater Treatment Plan. [JA 1411, 1429, 1430.] The Facilities Plan analyzed and recommended expanded service provision for the entire planning area. [JA 1444–45.] It also called for utilizing and upgrading the Southside Water Treatment Plant in order to service the necessary expansion. [JA 1434–43.]

CFPUA and its predecessors have spent approximately $8 million upgrading the Southside Water Treatment Plant in order to provide expanded service in the southern area of the County. [JA 362.] Additional planning documents confirm that NHCWSD and CFPUA planned, and still plan, to expand service to these areas:

- *City of Wilmington and New Hanover County Wastewater Master Plan (July 2001)* ("2001 Master Plan") [JA 635–926]: The City and County included the unincorporated areas (including Becker Woods) in their analysis of future demand for the Southside Wastewater Treatment Plant capacity. [JA 635, 680, 697–709.]

- *New Hanover County and City of Wilmington Wastewater Master Plan Update (2007)* ("2007 Master Plan") [JA 966–1240]: The 2007 Master Plan confirmed that Becker Woods was included in the Southside Wastewater Treatment Plant service footprint for planning purposes. [JA 966, 977–78.]

8

- *CFPUA Final Integrated Water Resources Master Plan (2010)* ("2010 Master Plan") [JA 1245–1347]:  The 2010 Master Plan included the Becker Woods area in the planning for expanding the Southside Wastewater Treatment Plant from 12 million gallons per day to 16 million gallons per day.  [JA 1245, 1291, 1294 ("The primary areas within the County that fall into the Priority II-1 expansion area are the areas adjacent to the existing system and that have been predicted for significant growth.  Also included in this region are potential large bulk sales customers:  General Electric in the northern portion of the County *and the Aqua NC service area*…") (emphasis added), 1297 (listing "Aqua Customers"—such as Becker Woods—as a "future service type" for bulk water and sewer services under "Priority Expansion Major Sub-Area"), 1305 ("If a parcel was identified to be within the City of Wilmington's jurisdiction or the unincorporated areas of New Hanover County and had not been identified as an existing account, it was included in the future demand analysis.  These parcels included those within a private utility service area including Aqua and Carolina Water Service, Inc."), 1312 (projecting average use per day for properties currently served by Aqua—such as Becker Woods).]

9

- *CFPUA Environmental Assessment: M'Kean Moffitt (Southside) Wastewater Treatment Facility Expansion and Upgrade to 24 MGD (2011)* ("2011 Environmental Assessment") [JA 1384–1400]: The 2011 Environmental Assessment, produced by CFPUA, included the Becker Woods area in its analysis of those properties CFPUA would serve with an expanded Southside Wastewater Treatment Plant. [JA 1384, 1390 (describing the Southside Wastewater Treatment Plant coverage area to include all land up to Snow's Cut, which includes Becker Woods).]

Because of the economic downturn, among other things, CFPUA has yet to expand sewer service to Becker Woods. [JA 362.] Becker Woods is still receiving sewer services from Aqua. However, CFPUA, as successor to NHCWSD, remains committed to providing sewer services throughout the southern portion of the County, including Becker Woods. This reasoning supports NHCWSD's collection of impact fees from Plaintiff.

## SUMMARY OF ARGUMENT

Plaintiff claims that impact fees for water and sewer service charged by CFPUA's predecessor in interest, NHCWSD, were not authorized by statute and local ordinance (that is, were ultra vires) and were unconstitutional. [JA 14–21.] The District Court granted summary judgment to Plaintiff, finding that Defendants'

10

actions were <u>ultra vires</u>.  [JA 51–62.]  However, Plaintiff's claims are barred by the applicable statutes of limitation:

- Plaintiff's state-law claims (First Claim for Relief—"<u>Ultra Vires</u>" and Fourth Claim for Relief—"Statutory Refund") are barred by the three-year statute of limitations found in § 1-52(2) for "a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it."  N.C. Gen. Stat. § 1-52(2).

- Plaintiff's constitutional claims (Second Claim for Relief—"Due Process" and Third Claim for Relief—"Equal Protection") are barred by the three-year statute of limitations found in § 1-52(5) for "injury to the person."

- In the alternative, Plaintiff's state-law claims are barred by either the three-year limitation period found in § 1-52(5) for "injur[ies] to the person or rights of another, not arising on contract and not hereafter enumerated," or the two-year limitation period found in § 1-53(1) for "[a]n action against a local unit of government upon a contract, obligation or liability arising out of contract, express or implied."

In addition, Plaintiff's claims are barred by the equitable doctrine of laches because Plaintiff waited over five years after paying the impact fees to file its Complaint.  [JA 14, 16; Complaint, p. 1.]  Documents prepared by Plaintiff

11

confirm that it paid its first impact fee in March 2005 and its latest impact fee on or about July 13, 2006.  [JA 603.]  Such a delay is unreasonable and amounts to a "negligent omission for an unreasonable time to assert a right."  <u>Builders Supplies Co. of Goldsboro, N.C., Inc. v. Gainey</u>, 282 N.C. 261, 271, 192 S.E.2d 449, 456 (1972).

Moreover, Defendants' actions in assessing and collecting impact fees from Plaintiff were not <u>ultra vires</u>, but were in accordance with the authority granted by § 162A-88 of the North Carolina General Statutes which authorizes water and sewer districts to establish and collect fees or other charges "for the use of or the services furnished or *to be furnished*."  N.C. Gen. Stat. § 162A-88 (emphasis added).  <u>See also</u> N.C. Gen. Stat. § 162A-9 (providing similar fee-setting powers for water and sewer authorities like CFPUA).  Further, § 153A-276 of the North Carolina General Statutes allows the County to facilitate the collection and appropriation of impact fees for developing public wastewater infrastructure.

Pursuant to that authority, the County enacted various ordinances, including §§ 15-124(d) and 15-121(b) of the New Hanover County Code of Ordinances, which provided for payment of a "treatment plant capacity fee (impact fee)" for all new development.  [JA 521–22.]  Because NHCWSD had authority both by statute and by local ordinance to collect impact fees for the purpose of expanding system capacity for services to be furnished, Defendants' actions were not <u>ultra vires</u>.

12

Based on its entry of summary judgment in favor of Plaintiff, the District Court granted Plaintiff's "Motion for Attorney Fees and Nontaxable Costs" and, pursuant to § 6-21.7 of the North Carolina General Statutes, awarded Plaintiff $20,000 in attorneys' fees and $270 in nontaxable costs.  [JA 111.]  However, based on the arguments presented above, Plaintiff should not have been the prevailing party and the award of attorneys' fees and nontaxable costs was in error.

## ARGUMENT

## I.    STANDARD OF REVIEW

### A.    Granting Of Summary Judgment—*De Novo*

This Court reviews the granting of summary judgment *de novo* on appeal. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the parties opposing the motion—that is, Defendants.  Id.

### B.    Award Of Attorneys' Fees—*Abuse Of Discretion*

The recovery of attorneys' fees, even when authorized by statute, is within the trial court's discretion and will be reviewed only for an abuse of that discretion. Etheridge v. Cnty. of Currituck, 762 S.E.2d 289, 295 (N.C. Ct. App. 2014).

13

II.    **THE DISTRICT COURT ERRED WHEN IT GRANTED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENIED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATION AND THE DOCTRINE OF LACHES.**

A.    **Statutes Of Limitation**

1.    **Introduction**

Both Defendants CFPUA and the County raised the statutes of limitation as defenses in their Answers to Plaintiff's Amended Complaint. [JA 25, 37.] When a defendant raises a statute of limitations defense, the burden then falls on the plaintiff to establish that he has instituted the action within the applicable time period. Shepard v. Ocwen Fed. Bank, FSB, 361 N.C. 137, 139, 638 S.E.2d 197, 199 (2006). Federal courts apply state statutes of limitation when state-law claims are at issue. See, e.g., Liner v. DiCresce, 905 F. Supp. 280, 289 (M.D.N.C. 1994). They also look to analogous state-law periods when a party asserts a private right of action based on an alleged constitutional violation. See, e.g., Cornett v. Weisenburger, 454 F. Supp. 2d 544, 547 (W.D. Va. 2006).

14

**2.    Plaintiff's First and Fourth Claims Are Barred by the Three-Year Limitation Period Found in § 1-52(2) of the North Carolina General Statutes as a "Liability Created by Statute."**

In his First Claim for Relief, Plaintiff alleges that NHCWSD and CFPUA acted outside the authority granted to them by the North Carolina General Statutes, including § 162A-88, when whey assessed and collected impact fees from Plaintiff. [JA 16–17.]  In his Fourth Claim for Relief, Plaintiff seeks a refund of "its illegally assessed impact fee" pursuant to § 153A-324 of the North Carolina General Statutes.  [JA 20.]

The statute of limitations applicable to Plaintiff's state-law claims is found in § 1-52(2) of the North Carolina General Statutes.  It applies a three-year statute of limitations "upon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it."  N.C. Gen. Stat. § 1-52(2). As discussed infra, NHCWSD had the statutory authority to assess impact fees pursuant to N.C. Gen. Stat. § 162A-88.  Further, N.C. Gen. Stat. § 153A-276 allowed the County to facilitate the collection and appropriation of impact fees for developing public wastewater infrastructure.  Plaintiff simply alleges that the manner in which Defendants have exercised this statutory authority has resulted in liability.

Case law supports application of § 1-52(2).  For instance, in Town of Morganton v. Avery, 179 N.C. 551, 103 S.E. 138 (1920), the Supreme Court of

15

North Carolina applied the statute of limitations period for a "liability created by statute" to a town enforcing an assessment for paving sidewalks on a property owner's land.  Id. at 551, 103 S.E. at 138.  The Court stated:  "Without the creative force of the statute, the charge upon the land could not be made.  If the statute was repealed, the power to create the charge would be gone."  Id. at 551, 103 S.E. at 139.

Other examples of application of § 1-52(2) by North Carolina courts include the following:

- Wilson v. McLeod Oil Co., Inc., 327 N.C. 491, 398 S.E.2d 586 (1990):  The plaintiffs alleged that the defendants were liable under § 143-215.93 of the Oil Pollution and Hazardous Substances Control Act of 1978 for the contamination of the plaintiffs' wells with gasoline.  The North Carolina Supreme Court held that because there was no provision for a statute of limitations within the Act itself, the three-year statute of limitations found in § 1-52(2) applied.  Id. at 511, 398 S.E.2d at 596.

- Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ., 188 N.C. App. 454, 655 S.E.2d 850 (2008):  The plaintiffs, all charter schools, sought damages for "unpaid appropriations" required to be paid by Charlotte-Mecklenburg Schools under § 115C-

16

238.29H(b) of the North Carolina General Statutes.  The North

Carolina Court of Appeals held that, since that statute contained no

limitation period, the three-year statute of limitations in § 1-52(2)

controlled.  Id. at 465, 655 S.E.2d at 857.

Application of § 1-52(2) does not require that the statute at issue create a

private right of action.  For example, in Hicks v. Wake Cnty. Bd. of Educ., 187

N.C. App. 485, 653 S.E.2d 236 (2007), the statute at issue was § 115C-325(c)(2),

the applicable version of which required the defendant school board to vote on the

plaintiff's status as a career teacher at the latest after the plaintiff's second year of

employment.  If the school board failed to so vote, the plaintiff was entitled to one

month's pay as of June 16 and an additional month's pay for every 30 days after

June 16 that the board failed to vote.  The plaintiff brought a declaratory action as

to his rights under the statute.  The North Carolina Court of Appeals held that the

plaintiff's claim was based on a liability created by statute and, thus, applied the

three-year statute of limitations found in § 1-52(2).  Id. at 489, 653 S.E.2d at 239.

Another illustrative case is State ex rel. Long v. Custard, 2007 WL 2570241

(N.C. Bus. Ct. Aug. 8, 2007), in which the plaintiff brought suit for breach of

fiduciary duty.  The North Carolina Business Court determined that the standards

of conduct for both directors and officers were defined by N.C. Gen.

Stat. § 55-8-30 and § 55-8-42, respectively.  "Since the standards of conduct for

17

corporate officers and directors arise out of the aforementioned statutes, and those statutes do not contain their own limitation periods, the Court concludes that the limitations period for breach of fiduciary duty is three years." Id. at *9.

Courts in other jurisdictions have provided similar analyses in defining what is a "liability created by statute." In Howard Jarvis Taxpayers Ass'n v. City of La Habra, 23 P.3d 601 (Cal. 2001), for example, the Supreme Court of California held that the statute of limitations "upon a liability created by statute" applied where a municipality had imposed utility user taxes without voter approval. Id. at 604. In Kenai Peninsula Borough v. Port Graham Corp., 871 P.2d 1135 (Alaska 1994), a plaintiff brought suit seeking a refund of taxes paid under protest on 41 parcels of property which the plaintiff argued were exempt from taxation. The court held that "[t]he liability of a municipality for a tax refund is a liability created by statute." Id. at 1139.

In the instant case, NHCWSD was created pursuant to Chapter 162A, Article 6, of the North Carolina General Statutes [JA 15, 23, 518–20] which provides county water and sewer districts with a broad range of powers. Section 162A-88 of that Article authorizes the district to "*establish, revise and collect rates, fees* or other charges and penalties *for the use of or the services furnished or to be furnished* by any sanitary sewer system, water system or sanitary sewer and water system of the district." (Emphasis added). Similarly, CFPUA, the

successor to NHCWSD, was created pursuant to Chapter 162A, Article 1, of the

North Carolina General Statutes.  [JA 14, 22, 29–30, 1348.]  Section 162A-9 of

that Article provides similar fee-setting powers for water and sewer authorities.

And, as explained infra, § 153A-276 allowed the County to facilitate the collection

and appropriation of impact fees for developing public wastewater infrastructure.

Pursuant to the foregoing authority, the County enacted various ordinances which

required the payment of impact fees for all new development within NHCWSD's

jurisdiction.  [JA 521–22.]  NHCWSD and CFPUA used the impact fees to expand

their wastewater infrastructure, with the goal of providing expanded service

coverage in the unincorporated areas of the County.  [JA 362.]

        As part of the development of Becker Woods, Plaintiff submitted New

Hanover County Building Permit Applications.  [JA 525–602.]  The County then

issued Engineering Fee Sheets which contained charges for impact fees for each

applicable property pursuant to the County Ordinances.  [JA 525–602.]  Plaintiff

initially disputed these impact fees [JA 412–16], but eventually paid them,

received its building permits, and developed Becker Woods.

        Plaintiff claims that CFPUA acted beyond the authority found in

Chapter 162A when it assessed the impact fees and seeks a refund of the fees

pursuant to § 153A-324 of the North Carolina General Statutes.  [JA 16–17, 20.]

Section 153A-324 requires a county to return the fees, plus interest at 6% per

annum, "[i]f the county is found to have illegally exacted a tax, fee, or monetary contribution for development or a development permit not specifically authorized by law."  N.C. Gen. Stat. § 153A-324.

Plaintiff is suing over an action taken by NHCWSD pursuant to a statute authorizing impact fee charges.  It argues that CFPUA and the County have acted improperly under these statutes by not actually providing sewer service to the properties.  Plaintiff asserts that Defendants are liable for all amounts previously paid, and this theory underlies each of the claims for relief.  However, this is not a situation where NHCWSD acted without any statutory authorization whatsoever.  There is no question that water and sewer districts are entitled to assess and collect impact fees.  Instead, Plaintiff argues that the manner in which Defendants exercised their authority has resulted in liability.  Plaintiff consequently claims that Defendants are liable for a specific statutory violation.  The impact fee is a fee created by statute—e.g., § 162A-88—and, as such, is a liability created by statute.  As explained by the North Carolina Supreme Court:  "Without the creative force of the statute, the charge upon the land could not be made.  If the statute was repealed, the power to create the charge would be gone."  Town of Morganton v. Avery, 103 S.E. at 139.  Based upon the authority granted by § 162A-88, NHCWSD imposed the impact fees for new developments within the County.

Without that authority, the fees could not be imposed, and if § 162A-88 were repealed, the power to impose such fees would be gone.

Similarly, § 153A-324 requires the County to return a tax or fee, plus interest in the amount of 6% per annum, if the County is found to have illegally exacted the tax or fee for development or a development permit not specifically authorized by law. In other words, this is a "liability created by statute."

The provisions of Chapter 162A and § 153A-324 do not contain a limitation period. Therefore, the three-year limitation contained in § 1-52(2) for a liability created by statute applies to Plaintiff's claims.

The Engineering Fee Sheets show that Plaintiff applied for building permits and was assessed impact fees during the time frame of March 2005 through July 2006. [JA 525–602; see also JA 16.] Plaintiff did not file its Complaint to recover those fees until December 2, 2011. Accordingly, Plaintiff's First and Fourth claims are barred by the three-year statute of limitations contained in § 1-52(2), and the District Court should have granted summary judgment on this issue in favor of Defendants.

3.    **Plaintiff's Second and Third Claims Are Barred by the Three-Year Limitation Period Found in N.C. Gen. Stat. § 1-52(5).**

In addition to its state-law claims, Plaintiff's Second and Third Claims for Relief raise the constitutional claims of due process and equal protection, respectively, in violation of Article I, Section 19, of the North Carolina Constitution and the Fourteenth Amendment to the United States Constitution. [JA 17–20.]  The limitation period for claims arising from violation of the North Carolina Constitution is three years under § 1-52(5) of the North Carolina General Statutes for "injury to the person."  Morley v. N.C. Dep't of Health & Human Servs./Broughton Hosp., 171 F. Supp. 2d 585, 592 (W.D.N.C. 2001); Staley v. Lingerfelt, 134 N.C. App. 294, 297, 517 S.E.2d 392, 395, disc. review denied, 351 N.C. 109, 540 S.E.2d 367 (1999).  A three-year statute of limitations also applies to Plaintiff's United States Constitution claims.  Bd. of Regents of Univ. of State of New York v. Tomanio, 446 U.S. 478, 484–86 (1980) (federal courts are obligated to apply the analogous state statute of limitations to federal constitutional claims); Housecalls Home Health Care, Inc. v. State, Dep't of Health & Human Servs., 200 N.C. App. 66, 72, 682 S.E.2d 741, 745 (2009) (applied three-year statute of limitations in § 1-52 to federal due process claims); Morrison-Tiffin v. Hampton, 117 N.C. App. 494, 500, 451 S.E.2d 650, 655 (1995) (applied three-year statute of limitations in § 1-52 to federal due process and equal protection claims).

Thus, as Plaintiff did not file its Complaint until more than three years after paying the impact fees, Plaintiff's claims for violation of the North Carolina and United States Constitutions are barred. Accordingly, the District Court erred when it failed to grant summary judgment to Defendants on this issue and its decision should be reversed.

      **4.**    **In the Alternative, Plaintiff's First and Fourth Claims Are Barred by Either the Three-Year Limitation Period Found in § 1-52(5) or the Two-Year Limitation Period Found in § 1-53(1).**

Section 1-52(5) applies a three-year limitation period to "injur[ies] to the person or rights of another, not arising on contract and not hereafter enumerated." Here, Plaintiff's claim that it was assessed an improper impact fee constitutes an "injury to the…rights of another." Therefore, the three-year statute of limitations found in § 1-52(5) applies to bar Plaintiff's claims.

Section 1-53(1) applies a two-year limitation period to "[a]n action against a local unit of government upon a contract, obligation or liability arising out of a contract, express or implied." In its Complaint, Plaintiff attempts to argue that the assessment of impact fees was without authority because Plaintiff was not connected to the County's water and sewer service. Stated differently, Plaintiff seems to allege that by imposing the impact fees and because of the Parties' implied obligations associated with the building permits, NHCWSD was obligated to immediately provide Plaintiff with water and sewer services. [See JA 17.]

23

Therefore, the two-year limitation period would control and Plaintiff's claims are barred.

### 5. The Ten-Year Limitation Period Found in § 1-56 Does Not Apply to this Case.

Both Plaintiff and the District Court relied on the case of <u>Amward Homes, Inc. v. Town of Cary</u>, 206 N.C. App. 38, 698 S.E.2d 404 (2010), <u>aff'd by equally divided court</u>, 365 N.C. 305, 716 S.E.2d 849 (2011), for the holding that the ten-year statute of limitations contained in § 1-56 of the North Carolina General Statutes applies to claims where a governmental authority charged fees without statutory authority. [JA 57.] However, not only does <u>Amward Homes</u> "stand[] without precedential value" because it was decided by an equally-divided panel of the North Carolina Supreme Court, but it also is distinguishable from the case at bar.

In <u>Amward Homes</u>, builders filed suit against the Town of Cary to recover building permit fees which were paid to fund schools in the Town. Relying on its decision in <u>Union Land Owners Ass'n v. Cnty. of Union</u>, 201 N.C. App. 374, 381, 689 S.E.2d 504, 508 (2009), the North Carolina Court of Appeals held that the North Carolina Constitution placed the duty to fund public schools on the General Assembly and local government. The General Assembly had not authorized the Town to shift that duty by using subdivision ordinances that impose fees on developers of new construction to pay for public education. Therefore, the Town's

"Adequate Public School Facilities" ordinance was <u>ultra vires</u>.  206 N.C. App. at 53, 698 S.E.2d at 416.  Based on that finding, the Court of Appeals held that the plaintiffs' claims involved "the Town's custom, usage, and practice of accepting fees through an abandoned and unlawful mechanism grandfathered by a subdivision plan."  <u>Id.</u> at 59, 698 S.E.2d at 419.  Because the North Carolina General Statutes do not provide a shortened timeframe for such claims, the Court applied the ten-year statute of limitations found in § 1-56 ("An action for relief not otherwise limited by [§ 1-14 through § 1-55] may not be commenced more than 10 years after the cause of action has accrued").

The <u>Amward Homes</u> decision must be limited to its unique facts.  After attempting to find an applicable limitations period by reviewing "the entirety of Chapter I, [A]rticle 5 of [the North Carolina General Statutes]," the Court held that there was no applicable limitations period for "the Town's custom, usage, and practice of accepting fees through an abandoned and unlawful mechanism grandfathered by a subdivision plan."  <u>Id.</u>  The undisputed facts in this case are distinguishable.  Contrary to the situation in <u>Amward Homes</u> (and as further discussed, <u>infra</u>), NHCWSD had express authority pursuant to § 162A-88 to "*establish, revise and collect rates, fees* or other charges and penalties *for the use of or the services* furnished or *to be furnished* by any sanitary sewer system, water system or sanitary sewer and water system of the district."  (Emphasis added).  <u>See</u>

also § 162A-9(a) ("*An authority may establish and revise a schedule of rates, fees,* and other charges for the use of and *for the services* furnished or *to be furnished* by any water system or sewer system or parts thereof owned or operated by the authority." (Emphasis added). Unlike the facts in <u>Amward</u>, it is indisputable that local governments are authorized to charge impact fees for sewer and water services. See also <u>South Shell Inv. v. Town of Wrightsville Beach</u>, 703 F. Supp. 1192, 1204–05 (E.D.N.C. 1988), <u>aff'd</u>, 900 F.2d 255 (4th Cir. 1990). Therefore, as discussed above, Plaintiff's claims amount to a "liability created by statute" to which the three-year statute of limitations found in § 1-52(2) applies.

## 6.    Summary

In sum, Plaintiff's claims are barred by the statutes of limitation. The three-year statute of limitations under § 1-52(2) for a "liability created by statute" controls Plaintiff's state-law claims and the three-year statute of limitations under § 1-52(5) controls Plaintiff's constitutional claims. In the alternative, other statutes of limitation apply to bar Plaintiff's claims. Therefore, because the District Court applied the incorrect statutes of limitation, the District Court erred in granting Plaintiff's Motion for Summary Judgment and in denying Defendants' Motion for Summary Judgment on this issue, and its decision should be reversed.

**B.    Laches**

Plaintiff's claims are also barred by the equitable doctrine of laches.  Laches is an equitable defense "which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant."  Fulmore v. City of Greensboro, 834 F. Supp. 2d 396, 421 (M.D.N.C. 2011) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117–18 (2002)); see also Chen v. VPT, Inc., No. 7:08-CV-00419, 2008 WL 4693556 (W.D. Va. Oct. 24, 2008).  "It is applicable when the plaintiff can be shown to have lacked the diligence which may be expected of a reasonable and prudent man.…It is the negligent omission for an unreasonable time to assert or enforce an equitable right.…"  Taylor v. City of Raleigh, 22 N.C. App. 259, 261, 206 S.E.2d 401, 403 (1974), aff'd, 290 N.C. 608, 227 S.E.2d 576 (1976) (citations omitted).  A defendant must prove "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."  Fulmore, 834 F. Supp. 2d at 421.

In Cannon v. City of Durham, 120 N.C. App. 612, 613–15, 463 S.E.2d 272, 273–75 (1995), the North Carolina Court of Appeals held that laches barred the claim that a city's financing of a new ballpark was ultra vires.  The plaintiff waited over two years to bring his lawsuit, although there was extensive publicity surrounding the construction of the park, thereby giving the plaintiff ample notice of the actions giving rise to his ultra vires claims.  The Court held further that even

27

if an ordinance or actions of a governmental body are <u>ultra vires</u>, plaintiffs are not entitled to relief if they are guilty of laches.

Similarly, in <u>Taylor v. City of Raleigh</u>, <u>supra</u>, the North Carolina Court of Appeals held that laches prevented a group of plaintiffs from pursuing their claim that a rezoning ordinance and an annexation ordinance were unconstitutional.  The plaintiffs again had waited over two years to bring their claims, although they had previous knowledge of, and even attended public hearings where they opposed, the ordinances.  The Court held that "[t]he plaintiffs have not been diligent in asserting their rights, if any, in opposition to the zoning change; and we hold that they are barred by the doctrine of laches from asserting such rights at this time."  <u>Id.</u> at 261, 206 S.E.2d at 403.

The case of <u>Save Our Schools of Bladen Cnty., Inc. v. Bladen Cnty. Bd. of Educ.</u>, 140 N.C. App. 233, 535 S.E.2d 906 (2000), provides another example of a court applying a laches defense.  A nonprofit organization sued to challenge the Board of Education's consolidation plan, but the North Carolina Court of Appeals found the suit was barred by laches because the nonprofit waited approximately two years from the time it had sufficient knowledge to bring its claim.  <u>Id.</u> at 236–37, 535 S.E.2d at 909.  By this time, the Board had already "proceed[ed] with actions necessary to carry out the consolidation," including entering into contracts.

28

Id. at 237–38, 535 S.E.2d at 910.  In holding that summary judgment based on

laches was properly granted, the Court of Appeals stated:

> Whenever the delay is mere neglect to seek a known remedy or to
> assert a known right, which the defendant has denied, and is without
> reasonable excuse, the courts are strongly inclined to treat it as fatal to
> the plaintiff's remedy in equity, even though much less than the
> statutory period of limitations, if an injury would otherwise be done to
> the defendant by reason of the plaintiff's delay.

Id. at 235, 535 S.E.2d at 908–09 (quoting Teachey v. Gurley, 214 N.C. 288, 294,

199 S.E. 83, 88 (1938)).  The Court noted that the laches defense had been applied

to claims challenging local ordinances, and that most cases had required that a

statutory challenge be brought quickly (e.g., "within four days to three months").

Id. at 237, 535 S.E.2d at 910.

In the instant case, Plaintiff waited over five years to file its Complaint.

[JA 14, 16; Complaint, p. 1.]  Documents prepared by Plaintiff confirm that it paid

its first impact fee in March 2005 and its latest impact fee on or about July 13,

2006.  [JA 603.]  Plaintiff's principal, Tommy Davis, readily admits that Plaintiff

never believed it would be connected to the NHCWSD wastewater system and that

such charges were unlawful.  [JA 404, 427.]  In fact, Plaintiff actively protested the

impact fee bills in 2005, but waited until December 2, 2011 to file its Complaint.

[JA 413–18; Complaint, p. 1.]  As was the case in Cannon, supra; Taylor, supra;

and Save Our Schools, supra, such a delay is unreasonable and amounts to a

"negligent omission for an unreasonable time to assert a right."  Builders Supplies

Co. of Goldsboro, N.C., Inc. v. Gainey, 282 N.C. 261, 271, 192 S.E.2d 449, 456 (1972).

In addition, Defendants have been unfairly prejudiced by Plaintiff's delay. They invested the funds collected from the impact fees into expansion of wastewater service capacity in order to, in part, eventually provide services to communities such as Becker Woods. [JA 362, 635, 680, 697–709, 966, 977, 1245, 1291, 1297, 1305, 1312, 1384, 1390.] NHCWSD no longer even exists. CFPUA assumed responsibility for the water and sewer services throughout the County and the City in 2008. [JA 1401–06.] Further, Plaintiff does not even own the properties at issue. It has since sold the homes to third parties who likely bore the costs of the impact fees when they paid the purchase price of their homes. [JA 465.] The Parties' circumstances have changed such that holding CFPUA and the County responsible for a former 2005–2006 policy is inequitable.

Therefore, Plaintiff's claims are barred by the doctrine of laches in addition to the applicable statutes of limitation. Accordingly, the District Court erred when it granted Plaintiff's Motion for Summary Judgment and denied Defendants' Motion for Summary Judgment, and its decision should be reversed.

III.   **THE DISTRICT COURT ERRED WHEN IT GRANTED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENIED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE NHCWSD'S ACTIONS WERE AUTHORIZED BY STATUTE AND BY LOCAL ORDINANCE.**

In its First Claim for Relief, Plaintiff seeks a declaratory judgment that NHCWSD exceeded its statutory authority by assessing and collecting impact fees from Plaintiff—in other words, that NHCWSD's actions were ultra vires. [JA 16-17.]

An act is ultra vires if it is unauthorized—that is, beyond the scope of authority conferred under law.  See, e.g., Lee v. Wake Cnty., 165 N.C. App. 154, 159, 598 S.E.2d 427, 421 (2004).  Courts typically interpret statutory grants of authority to local governments broadly so that local authorities can operate effectively.  See, e.g., N.C. Gen. Stat. § 153A-4 ("It is the policy of the General Assembly that the counties of this State should have adequate authority to exercise the powers, rights, duties, functions, privileges, and immunities conferred upon them by law.  To this end, the provisions of this Chapter and of local acts shall be broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of the power."); Myers v. Town of Plymouth, 135 N.C. App. 707, 710–11, 522 S.E.2d 122, 124–25 (1999) ("[T]he legislature gives municipalities broad discretion in exercising those powers explicitly conferred.").

31

Plaintiff contends that NHCWSD's actions were ultra vires because NHCWSD charged impact fees for properties that would not be immediately connected to its wastewater system, a policy that was authorized neither by statute nor by local ordinance. [JA 16–17.] Contrary to this allegation, the impact fees were authorized by applicable law.

## A.    Statutory Authorization

During the 2005–2006 period in question, NHCWSD operated pursuant to Chapter 162A, Article 6, of the North Carolina General Statutes. Article 6 provides county water and sewer districts, such as NHCWSD, with a broad range of powers. (Chapter 162A, Article 1, provides similar powers to water and sewer authorities such as CFPUA.) For instance, § 162A-88 states:

> The inhabitants of a county water and sewer district created pursuant to this Article are a body corporate and politic by the name specified by the board of commissioners. Under that name they are vested with all the property and rights of property belonging to the corporation; have perpetual succession; may sue and be sued; may contract and be contracted with; may acquire and hold any property, real and personal, devised, bequeathed, sold, or in any manner conveyed, dedicated to, or otherwise acquired by them, and from time to time may hold, invest, sell, or dispose of the same; may have a common seal and alter

32

and renew it at will; *may establish, revise and collect rates, fees or other charges and penalties for the use of or the services furnished or to be furnished by any sanitary sewer system, water system or sanitary sewer and water system of the district; and may exercise those powers conferred on them by this Article.*

N.C. Gen. Stat. § 162A-88 (emphasis added). <u>See also</u> N.C. Gen. Stat. § 162A-9 (providing similar fee-setting powers for water and sewer authorities). In addition, § 162A-88 explicitly provides the power to "revise" fees.

In a 1990 case, the North Carolina Supreme Court approved the assessment of fees to customers for whom no sewer service was then existing. In <u>McNeill v. Harnett Cnty.</u>, 327 N.C. 552, 398 S.E.2d 475 (1990), prior to the construction of the sewer system, the Water and Sewer District charged fees to customers to fund such construction. The Water and Sewer District interpreted the language found in § 162A-88 which allowed it to charge user fees for services "to be furnished," to authorize it to charge those fees even before the project was built, thereby financing the local share of the project costs. The North Carolina Supreme Court agreed. Recognizing the North Carolina General Assembly's intent to "grant[] broad powers to water and sewer districts," the Court held that "the provisions of N.C.G.S. § 162A-88 authorizing user fees for services 'to be furnished' is *not*

33

limited to the financing of maintenance and improvements of *existing* customers."

Id. at 558, 570, 398 S.E.2d at 478, 485 (emphasis in original).[3]

NHCWSD existed as a creature of the County government.  [JA 518–20.]

County governments themselves have the authority to assess impact fees.

Section 153A-276 of the North Carolina General Statutes, for instance, provides:

"Subject to the restrictions, limitations, procedures, and regulations otherwise

provided by law, a county may finance the cost of a public enterprise by levying

taxes, borrowing money, *and appropriating any other revenues*, and by accepting

and administering gifts and grants from any source."  N.C. Gen. Stat. § 153A-276

(emphasis added).  Section 153A-274 defines "public enterprise" to include "water

supply and distribution systems" and "wastewater collection, treatment, and

---

[3]  Other sources have confirmed the broad powers granted to county water and
sewer districts.  For example, a research report jointly published by the
Environmental Finance Center at the UNC School of Government and the North
Carolina League of Municipalities describes the use of impact fees:

> Tap fees are designed to recover all or a portion of the cost (materials
> and labor) of connecting a customer to the nearest water or sewer line,
> while system development charges, also known as impact fees, are
> associated with developing system capacity.  *Utilities have great
> flexibility in setting tap fees and system development charges*.  As a
> result, the basis utilities use for determining fees varies widely across
> the state.

Shadi Eskaf & Chris Nida, "Tap Fees and System Development Charges for
Residential Water and Wastewater Connection in North Carolina as of
January 2009" (May 5, 2009), http://www.efc.sog.unc.edu/reslib/item/tap-fees-
and-system-development-charges-residential-water-and-wastewater-connections
(emphasis added).

disposal."  Courts have held that such statutes authorize the assessment of impact

fees.  See, e.g., South Shell Inv. v. Town of Wrightsville Beach, 703 F. Supp.

1192, 1204–05 (E.D.N.C. 1988), aff'd, 900 F.2d 255 (4th Cir. 1990) ("[T]his court

concludes that the Town had the authority to impose the impact and tap fees under

North Carolina's public enterprise statute.").

Based on the foregoing, NHCWSD had the authority to assess impact fees,

including impact fees for services "to be furnished" in the future, against Plaintiff.

In McNeill, supra, the North Carolina Supreme Court confirmed that NHCWSD

could charge developers in areas that were within its jurisdiction but not yet

customers—i.e., areas in which sewer service was not yet available.  McNeill, 327

N.C. at 570, 398 S.E.2d at 485.

The undisputed facts show that NHCWSD assessed the impact fees in order

to develop capacity for services "to be furnished" in areas including Becker

Woods.  NHCWSD collected the impact fees to expand its wastewater

infrastructure with the goal of expanding service coverage in the unincorporated

areas of the County.  [JA 362.]  Indeed, various plans and reports confirm that

NHCWSD and CFPUA planned, and do plan, to provide services to these areas.

As far back as 1976, the Greater Wilmington Area 201 Facilities Plan

[JA 1411-445] included the southern unincorporated areas in its Regional

Wastewater Treatment Plan and called for expansion of the Southside Wastewater

35

Treatment Plant.  [JA 1411, 1430, 1434, 1435, 1444 (summarizing "Regional

Plan B" which was the approach officially adopted by the 201 Facilities Plan).]

Defendants have used such funds to prepare for service expansion, including

spending approximately $8 million on the design of a wastewater treatment plant

in the southern part of the County.  [JA 362.]  Additional planning documents

confirm that NHCWSD and CFPUA have planned to expand service to areas

including Becker Woods.  [JA 635, 680, 697–709, 966, 977, 1245, 1291, 1297,

1305, 1312, 1384, 1390.]

        It is also important to note that NHCWSD only assessed Plaintiff impact

fees, not tap fees.  Utility providers collect tap fees based on the costs of a property

tapping into their systems and immediately receiving water or sewer services.

Impact fees, in contrast, are meant to fund future system expansion.  See Eskaf &

Nida, supra at n. 3 ("Tap fees are designed to recover all or a portion of the cost

(materials and labor) of connecting a customer to the nearest water or sewer line,

while system development charges, also known as impact fees, are associated with

developing system capacity.").

        Statutes from other states are instructive.  Wisconsin, for example, has

adopted a statute requiring that impact fees collected must be used within a

reasonable period of time.  See Wisc. Stat. § 66.0617(9) (requires impact fees that

are collected by a municipality within seven years after the effective date of the

ordinance imposing the fee, but are not used within ten years after the effective date of the ordinance, to be refunded to the property owner; the ten-year deadline may be extended for three years).  Similarly, a Texas statute requires the refund of an impact fee if existing facilities are available and service is denied or the political subdivision has, after collecting the fee when service was not available, failed to commence construction within two years or service is not available within a reasonable period, but in no event later than five years from the date of payment.  See Tex. Loc. Gov't Code Ann. § 395.025.  These statutes are noteworthy for two reasons:  First, refund requirements needed statutory authorization.  Second, the statutes also provide a somewhat lengthy time frame before a refund is required—e.g., ten years, with a possible three-year extension, or five years.

An analogous statute does not exist in North Carolina.  Neither NHCWSD nor CFPUA had—or have—any obligation to refund the impact fee in question.  Even if a comparable statute did exist, CFPUA's inability to provide wastewater services by this point would be justified.  The last several years have been atypical.  NHCWSD was merged with the City water and wastewater systems, creating CFPUA.  Moreover, the economic downturn affected CFPUA's ability to meet its planning goals based on the desired timelines.  [JA 362.]  Simply put, NHCWSD's actions were fully authorized by statute and, therefore, not ultra vires.

**B.    Local Ordinances**

Subsequent to the creation of NHCWSD, the County enacted various ordinances pertaining to those properties within its jurisdiction.  For instance, §§ 15-124(d) and 15-121(b) of the New Hanover County Code of Ordinances provided for payment of a "treatment plant capacity fee (impact fee)" for all new development.  [JA 521–22.]  An amendment on December 18, 1995 changed the "impact fee" reference to "facility fee," but the terms are synonymous.  [JA 523–24.]  This basic structure for impact fees continued in later versions of the Ordinance, including when these sections were subsequently renumbered as § 56-312 and § 56-315.  [JA 292–93, 294–95.]  During the times at issue in this lawsuit, impact fees were required for "all new development" within NHCWSD's jurisdiction, while other charges—particularly "sewer service connection fees (tap fees)"—were, in contrast, due only when actual connection to water or sewer services occurred.  [JA 292–93, 294–95, 523–24.]

CFPUA, in response to the economic downturn, subsequently changed this policy so that impact fees were due only at the time of service connection. [JA 362.]  However, the County Ordinances in effect in 2005–2006 required payment of an impact fee for new development throughout the jurisdiction, and the policy linked payment to the building permit procedures.  The Ordinances made no

exception for those properties that would not immediately receive sewer services from NHCWSD.

Again, it is indisputable that those properties in the southern part of the County (like Becker Woods) were within the legal jurisdiction of NHCWSD. [JA 518–20, 635, 680, 697–709, 966, 977, 1245, 1291, 1297, 1305, 1312, 1384, 1390.] Local law authorized NHCWSD to charge the impact fees at issue, and the County followed the specific procedure by assessing these charges at the time of building permit application. NHCWSD's actions did not conflict with local law.

**C.    Defendants Have The Ability To Provide Services To Becker Woods.**

In the District Court, Plaintiff argued that Defendants have no power of eminent domain and, therefore, Defendants' water and sewer services would not be able "to be furnished" to Becker Woods so as to comply with the language of § 162A-88. The issue of whether or not the impact fees were authorized does not involve any sort of eminent domain analysis. The fact remains that Becker Woods was within NHCWSD's jurisdiction at the time it charged the impact fees. [JA 518–20.] Moreover, § 162A-88 establishes that NHCWSD had the power to charge impact fees for properties within its jurisdiction, as did the County pursuant to § 153A-276. And the various Master Plans show that NHCWSD, the County, and CFPUA have planned, and do plan, to extend wastewater services to these areas. [JA 635, 680, 697–709, 966, 977, 1245, 1291, 1297, 1305, 1312, 1384,

39

1390.]  In fact, CFPUA and its predecessors spent over $8 million on expansion of the Southside Wastewater Treatment Plant specifically for wastewater needs stemming from such expanded service.  [JA 189, 194–95, 362 (noting that Aqua customers were the "lynch pin" in deciding whether or not to expand Southside Wastewater Treatment Plant capacity).]

Plaintiff's argument also incorrectly assumes that eminent domain would be the only mechanism for extending water service to Becker Woods.  This is incorrect.  For instance, CFPUA and its predecessors could extend wastewater services to areas serviced by a private utility through contractual dealings.  New Hanover County Contract #98-0173A between NHCWSD and Aqua, for example, specifically provides a right of first refusal to the County if and when Aqua sells any of its system assets.  [JA 604–09.]  The contract also explicitly considered the non-cost transfer of Aqua assets to NHCWSD.  [JA 604–09.]  New Hanover County Contract #98-0173 (a contract between NHCWSD and Fairways Utilities, Inc.—Aqua's predecessor in interest) provides another example of such a contractual relationship.  [JA 604–06, 610–14.]

In addition to obtaining the system assets of a private utility provider, NHCWSD also had the authority to simply expand its infrastructure and require property owners to connect thereto.  [JA 280–87.]

D.    Summary

Becker Woods was within NHCWSD's jurisdiction and, pursuant to Chapter 162A, other statutory provisions, and applicable County Ordinances, NHCWSD collected impact fees for the purpose of expanding system capacity for services to be furnished.  Accordingly, Defendants' actions were not <u>ultra vires</u>.  The District Court erred when it granted Plaintiff's Motion for Summary Judgment and denied Defendants' Motion for Summary Judgment, and its decision should be reversed.

IV.    THE DISTRICT COURT ERRED WHEN IT AWARDED ATTORNEYS' FEES AND NONTAXABLE COSTS TO PLAINTIFF.

A.    Introduction

The statute on which the District Court based its award of attorneys' fees and nontaxable costs is § 6-21.7 of the North Carolina General Statutes, which states:

> In any action in which a city or county is a party, upon a finding by the court that the city or county acted outside the scope of its legal authority, the court may award reasonable attorneys' fees and costs to the party who successfully challenged the city's or county's action, provided that if the court also finds that the city's or county's action was an abuse of its discretion, the court shall award attorneys' fees and costs.

N.C. Gen. Stat. § 6-21.7.  [<u>See</u> JA 109.]

In its Attorneys' Fees Order, the District Court determined that "there is not enough evidence to find abuse of discretion.  Thus, the award of attorneys' fees is

41

discretionary, not mandatory." [JA 110.] Accordingly, it awarded Plaintiff

$20,000 in attorneys' fees and $270.00 in nontaxable costs. [JA 111.]

### B. Plaintiff's Claims Are Barred By The Applicable Statutes Of Limitation.

As discussed above in Section II, pages 14–30, <u>supra</u>, Plaintiff's Claims are

barred by the following statutes of limitation and the doctrine of laches:

- Plaintiff's state-law claims are barred by the three-year statute of

  limitations found in § 1-52(2) for "a liability created by statute, either

  state or federal, unless some other time is mentioned in the statute

  creating it." N.C. Gen. Stat. § 1-52(2). <u>See</u> discussion at

  pages 15–21, <u>supra</u>.

- Plaintiff's constitutional claims are barred by the three-year statute of

  limitations found in § 1-52(5) for "injury to the person." <u>Morley v.

  N.C. Dep't of Health & Human Servs./Broughton Hosp.</u>, 171 F. Supp.

  2d at 592; <u>Staley v. Lingerfelt</u>, 134 N.C. App. at 297, 517 S.E.2d at

  395. <u>See</u> discussion at pages 22–23, <u>supra</u>.

- In the alternative, Plaintiff's state-law claims are barred by either the

  three-year limitation period found in § 1-52(5) for "injur[ies] to the

  person or rights of another, not arising on contract and not hereafter

  enumerated," or the two-year limitation period found in § 1-53(1) for

  "[a]n action against a local unit of government upon a contract,

42

obligation or liability arising out a contract, express or implied." See discussion at pages 23-24, supra.

In addition, Plaintiff's claims are barred by the equitable doctrine of laches. Here, Plaintiff waited over five years to file its Complaint. [JA 14, 16; Complaint, p. 1.] Documents prepared by Plaintiff confirm that it paid its first impact fee in March 2005 and its latest impact fee on or about July 13, 2006. [JA 603.] Such a delay is unreasonable and amounts to a "negligent omission for an unreasonable time to assert a right." Builders Supplies Co. of Goldsboro, N.C., Inc. v. Gainey, 282 N.C. at 271, 192 S.E.2d at 456. See discussion at pages 27–30, supra.

Inasmuch as Plaintiff's claims are barred by the applicable statutes of limitation and the doctrine of laches, Plaintiff was not "the party who successfully challenged the city's or county's action" under § 6-21.7. Accordingly, Plaintiff was not entitled to an award of attorneys' fees and costs and this Court should reverse the District Court's award of attorneys' fees and non-taxable costs in the Attorneys' Fees Order.

C.    **Defendants' Actions In Assessing Impact Fees Were In Accordance With State Statutes And Local Ordinances And Were Not Ultra Vires.**

As discussed at pages 31–41, supra, Defendants' actions in assessing and collecting impact fees from Plaintiff were not ultra vires. During the 2005–2006 period in question, NHCWSD operated pursuant to Chapter 162A, Article 6, of the

43

North Carolina General Statutes.  Section 162A-88 authorizes water and sewer districts to "establish, revise and collect rates, fees or other charges and penalties for the use of or the services furnished or to be furnished by any sanitary sewer system, water system or sanitary sewer and water system of the district; and may exercise those powers conferred on them by this Article."  N.C. Gen. Stat. § 162A-88.  See also N.C. Gen. Stat. 162A-9 (providing similar fee-setting powers for water and sewer authorities like CFPUA).  Similarly, as a creature of County government, NHCWSD had the authority to assess impact fees.  Section 153A-276 authorizes a county to "appropriate any other revenues" for a public enterprise which includes "water supply and distribution systems" and "wastewater collection, treatment, and disposal."  N.C. Gen. Stat. § 153A-274.

Based on these statutes, NHCWSD and CFPUA had the authority to assess impact fees, including impact fees for services "to be furnished" in the future, against Plaintiff.  And they did—they assessed impact fees to develop capacity for services "to be furnished" in areas including Becker Woods and collected the impact fees to expand their wastewater infrastructure with the goal of expanding service coverage in the unincorporated areas of the County.  [JA 362.]

In addition, the County enacted various Ordinances, §§ 15-124(d) and 15-121(b) of the New Hanover County Code of Ordinances, which provided for payment of a "treatment plant capacity fee (impact fee)" for all new development.

[JA 521–22.]  This basic structure for impact fees continued in later versions of the Ordinances, including when these sections were subsequently renumbered as § 56-312 and § 56-315.

Because NHCWSD had authority both by statute and by local ordinance to collect impact fees for the purpose of expanding system capacity for services to be furnished, Defendants' actions were not <u>ultra vires</u>.  Accordingly, Plaintiff was not "the party who successfully challenged the city's or county's action" under § 6-21.7 and was not entitled to an award of attorneys' fees and costs.  Therefore, this Court should reverse the award of attorneys' fees and nontaxable costs in the District Court's Attorneys' Fee Order.

**D.    Section 6-21.7 Of The North Carolina General Statutes, The Legal Authority Relied Upon By The District Court, Does Not Authorize An Award Of Attorneys' Fees And Nontaxable Costs Where The Entity Responsible For The Conduct Is Not A "City Or County."**

NHCWSD and its successor, CFPUA, are the entities responsible for providing water and sewer services to Becker Woods and, therefore, the entities that allegedly acted outside their legal authority by failing to timely provide the services to Becker Woods.  Under the language of § 6-21.7, however, neither is a city or county.  CFPUA is a water and sewer authority created pursuant to Chapter 162A, Article 1, of the North Carolina General Statutes.  [JA 14, 22, 29–30, 1348.]  NHCWSD was a water and sewer district created pursuant to Chapter 162A, Article 6, of the North Carolina General Statues.  [JA 15, 23,

45

518-20.]  A water and sewer authority is not a city or a county under North

Carolina law.

In the District Court, Plaintiff argued that the designation of CFPUA as a

"municipal corporation" is equivalent to being a "city" under § 6-21.7.  [JA 73.]

This position is incorrect.  The plain language of § 160A-1, which defines "city,"

specifically excludes from that definition municipal corporations such as water and

sewer districts, which are organized for a special purpose:

> "City" means a municipal corporation organized under the laws of this
> State for the better government of the people within its jurisdiction
> and having the powers, duties, privileges, and immunities conferred
> by law on cities, towns, and villages.  *The term "city" does not
> include counties or municipal corporations organized for a special
> purpose….*

N.C. Gen. Stat. § 160A-1 (emphasis added); cf. Hous. Auth. of City of Wilmington

v. Johnson, 261 N.C. 76, 81, 134 S.E.2d 121, 125 (1964) ("We have held that a

housing authority created pursuant to the provisions of our Housing Authorities

Law is a municipal corporation.  Even so, such a corporation is not an incorporated

city or town[.]") (citation omitted).  And, at any rate, there is no language in

Chapter 162A, Article 1, identifying CFPUA as a "municipal corporation."

Because the basis of the allegedly ultra vires act here—the failure to provide water

and sewer services in a timely manner—is not the direct action of a "city or

county," § 6-21.7 does not apply.  Without specific statutory authorization for the

award of attorneys' fees, such an award cannot be made.  Accordingly, this Court

should reverse the District Court's Attorneys' Fees Order.

## CONCLUSION

For the reasons set forth above, Defendants-Appellants CFPUA and New

Hanover County respectfully request that this Court reverse the Order of the

District Court and grant summary judgment in favor of Defendants and, in effect,

dismiss Plaintiff's claims.  In addition, Defendants-Appellants CFPUA and New

Hanover County respectfully request that this Court reverse the Attorneys' Fees

Order.

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants request oral argument and believe that it would be

helpful to the Court in resolving the issues presented.

This the 26th day of November, 2014.

WARD AND SMITH, P.A.

*/s/ Jeremy M. Wilson*
Jeremy M. Wilson
N.C. State Bar I.D. No.:  43301
Email:  jw@wardandsmith.com
Ryal W. Tayloe
N.C. State Bar I.D. No.:  010549
Email:  rwt@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 7068
Wilmington, NC  28406-7068
Telephone:  (910) 794-4800
Facsimile:  (910) 794-4877
Attorneys for Defendants-Appellants
  Cape Fear Public Utility Authority and
  New Hanover County

**ADDENDUM**

# TABLE OF CONTENTS

**Page**

New Hanover County Code of Ordinances § 15-121(b) .................................Add. 1

New Hanover County Code of Ordinances § 15-124(d) .................................Add. 2

New Hanover County Code of Ordinances § 56-312 .................................. Add. 3-4

New Hanover County Code of Ordinances § 56-315 .................................. Add. 5-6

N.C. Gen. Stat. § 1-52.................................................................... Add. 7-9

N.C. Gen. Stat. § 1-53.................................................................. Add. 10-11

N.C. Gen. Stat. § 6-21.7..................................................................Add. 12

N.C. Gen. Stat. § 153A-276.............................................................Add. 13

N.C. Gen. Stat. § 162A-9.............................................................. Add. 14-16

N.C. Gen. Stat. § 162A-88...............................................................Add. 17



WATER SUPPLY SYSTEM                    § 15-121

(3) If a developer, as owner, installs the tap to the public sanitary sewer for the development, the developer or subsequent owner of each property in the development will only incur an administration/inspection fee.

(4) Rental property or property on the market for sale, may be connected to the public sanitary sewer only by a licensed plumber.

(b) *Treatment plant capacity fee (impact fee).* All new development and nonresidential development obtaining a certificate of occupancy shall pay the treatment plant capacity fee specified in section 15-124, based on average daily flow. Swimming pools will be exempt from the treatment plant capacity fee. Average daily flow for the purposes of the impact fee shall be determined as follows:

(1) *Residential unit:* Three hundred (300) gallons per day.

(2) *Nonresidential unit:* Flow criteria as recommended by the state division of environmental management for sewage system requirements. In the event a flow is not specified by the state division of environmental management for a particular usage, the flow shall be based on water usage of similar facilities as determined by the district.

(3) *Nonresidential unit (industrial wastewater):* Industries that generate industrial wastewater, have a National Pollutant Discharge Elimination System (NPDES) permit, maintain a wastewater treatment facility with capacity sufficient to cover the average daily wastewater flow may be exempted from the treatment plant capacity fee by the board of county commissioners based on these and other criteria. This section does not exempt any non-process domestic wastewater. When the district's wastewater system becomes available to a nonresidential unit having industrial wastewater, the treatment place capacity fee shall be paid prior to connection.

(Ord. of 6-15-87, § 9; Ord. of 4-2-90; Ord. of 8-19-91; Ord. of 7-26-93(2); Ord. of 6-20-94)

Supp. No. 24                    1050.29

CF00005

Add. 1

WATER SUPPLY SYSTEM                § 15-124

(c) *Cost of installation of meters:*

$5/8''$ — meter — $150.00

$3/4''$ — meter — 150.00

$1''$ — meter — 200.00

$1\frac{1}{2}''$ meter and above — Cost

(d) *Treatment plant capacity fee (impact fee):* One dollar and twenty-five cents ($1.25) per gallon of average daily flow, with a minimum fee of three hundred seventy-five dollars ($375.00) per residential and nonresidential unit. For residential units only, a financing option is available for the impact fee consisting of an initial payment of ten (10) percent of the impact fee at time of application and nine (9) monthly payments of an equal amount due and payable on the first day of each month thereafter.

The treatment plant capacity fee will be determined as specified in section 15-121(b), however the minimum fee will not apply in the following circumstances:

(1) Nonresidential development or unit obtaining a certificate of occupancy where the structure is not new development.

(2) Nonresidential development or unit obtaining a building permit with an estimated construction cost of less than two thousand dollars ($2,000.00), where the structure is not new development.

(3) Building permits for new development where there is no plumbing in the entire structure. If plumbing is added later, the treatment plant capacity fee for new development will apply.

(e) *Other charges:*

(1) *Administration/inspection fees:* Twenty-five dollars ($25.00); applicable in the following specific situations (not all inclusive):

  a. Change in billing options (i.e flat rate or metered rate).
  b. Installation of tap by owner as described in section 15-121.

CF000_4

Add. 2

§ 56-311                NEW HANOVER COUNTY CODE

DIVISION 9. FEE SCHEDULE

**Sec. 56-311. Billing procedures.**

(a) *Owner of property to be customer of district.* Notwithstanding any language to the contrary appearing elsewhere in this article, the owner of real property being served by the public sanitary sewer shall be the customer of the district for the purpose of billing the basic user charges for such service. If the owner resides within the county, the account shall be placed in the owner's name and mailed to the owner's primary residence. If the owner resides outside the county, the account may be mailed to the property being served.

(b) *Bimonthly billing periods.* The district shall bill the basic user charges for sewer service bimonthly, which is approximately every two months. While the number of days in a bimonthly billing period may vary, there shall only be six billings per calendar year.

(c) *Billing start date for new development.* A customer's bimonthly billing period begins on the date of the plumbing final inspection by the inspections department of the county.

(d) *Change of ownership.* The owner, as customer, of property served by the public sanitary sewer is responsible for all basic user charges incurred on their account until the district is notified of a change in ownership. Upon notification, the new owner of the property becomes the customer of the district and is responsible for all basic user charges incurred as of the later of the closing date of the sale or the date of notification by the owners.

(e) *Multifamily parcels.* Each unit of a multifamily parcel will be treated as a single-family unit; and each unit will be responsible for all applicable charges, fees and penalties pursuant to section 56-315.
(Code 1978, § 15-120)

**Sec. 56-312. One-time sewer charges.**

(a) *Sewer service connection fees (tap fees).* Sewer service connection fees (tap fees) shall be charged to cover the cost of providing a tap to the sewer lateral. Tap fees shall be in the amounts stated in section 56-315 subject to the following modifications:

(1)   An owner may have his own tap installed by utilizing a licensed utility contractor, provided he:

    a.   Requests approval at the time of making application for connection to the public sanitary sewer.

    b.   Gives five days' notice to the district of the date the tap is to be made.

    c.   Constructs the tap with materials specified by the district under the supervision of a qualified licensed contractor.

    d.   Arranges for the presence of a district representative when the tap is made.

    e.   Pays the tap fee according to the fee schedule, with the understanding that the district will refund the tap fee, less an administration/inspection fee, upon the owner's completion of the tap in an improved manner.

(2) During construction of the public sanitary sewer, the owner of an undeveloped residential or nonresidential property may obtain a tap at the same rate as developed residential and nonresidential property provided the following conditions are met:

    a.  The property must be adjacent to or must front upon a proposed district sewer line.

    b.  The property owner must request in writing that a tap be placed on the undeveloped property.

(3) If a developer, as owner, installs the tap to the public sanitary sewer for the development, the developer or subsequent owner of each property in the development will only incur an administration/inspection fee.

(4) Rental property or property on the market for sale may be connected to the public sanitary sewer only by a licensed plumber.

(b) *Facility fee.* All new development and nonresidential development obtaining a certificate of occupancy shall pay the facility fee specified in section 56-315, based on average daily flow. Swimming pools will be exempt from the treatment plant capacity fee. Average daily flow for the purposes of the impact fee shall be determined as follows:

(1) *Residential unit.* For a residential unit, see section 56-315.

(2) *Nonresidential unit.* For a nonresidential unit, flow criteria as recommended by the state division of environmental management for sewage system requirements. If a flow is not specified by the state division of environmental management for a particular usage, the flow shall be based on water usage of similar facilities as determined by the district.

(3) *Nonresidential unit (industrial wastewater).* Industries that generate industrial wastewater, have a National Pollutant Discharge Elimination System (NPDES) permit, and maintain a wastewater treatment facility with capacity sufficient to cover the average daily wastewater flow may be exempted from the facility fee by the board of county commissioners based on these and other criteria. This section does not exempt any nonprocess domestic wastewater. When the district's wastewater system becomes available to a nonresidential unit having industrial wastewater, the facility fee shall be paid prior to connection.

(Code 1978, § 15-121; Ord. of 12-6-1999; Ord. of 4-18-2005, § I)

### Sec. 56-313. Basic user charges.

(a) *Established.* Basic user charges (user fees) shall be as established in section 56-315. The charges and fees developed in accordance with the provisions of this division shall be based on the formula ($Cu = CT/VT(Vu)$) as approved in the wastewater charge system.

(b) *Flat rate option for residential property.* The owner of residential property occupied with only one structure served by a sewer line may elect to pay flat bimonthly rates in lieu of metered bimonthly rates. If the owner initially chooses a flat rate, the owner may change to a

Add. 4

§ 56-313    NEW HANOVER COUNTY CODE

metered rate at any time upon payment of an administration/inspection fee set from time to time and contained in appendix B and the cost of installation of meters, if applicable per section 56-252. If a meter does not function properly due to the owner's water quality (i.e. sand) and the meter has been replaced twice, the district shall remove the meter and charge the flat rate.

(c) *Metered rate option for all other property.* All residential property owners not electing the flat rate option, all commercial and industrial properties, and all other properties shall be charged based on metered rates. Metered rates shall be either residential or nonresidential rates. If the owner initially chooses a metered rate, the owner may change to the flat rate option upon payment of an administration/inspection fee set from time to time and contained in appendix B. If a meter does not function properly due to the owner's water quality (i.e. sand) and the meter has been replaced twice, the district shall remove the meter and charge the flat rate.
(Code 1978, § 15-122; Ord. of 5-2-2005, § V)

### Sec. 56-314. Extra-strength wastewater surcharges.

(a) Standard-strength wastewater shall be defined as that wastewater having a maximum $BOD^5$, COD and suspended solids concentration as follows:

| | |
|---|---|
| $BOD^5$ | 250 mg/l |
| COD | 750 mg/l |
| Suspended solids (SS) | 200 mg/l |

(b) Industrial wastewater surcharges shall be assessed to any industrial users discharging wastewater, including constituents, at a concentration exceeding any of the limits established in this article. The surcharge rate shall be as set forth in section 56-315.
(Code 1978, § 15-123)

### Sec. 56-315. Specific fees.

(a) *Sewer service connection fees (tap fees).*

(1) Whenever the district constructs sewer collection lines into a new service area, all development is required to connect to the sewer within six months of the initial availability of the sewer system.

(2) For eight-inch and larger, installation costs shall be estimated by the district and paid at time of application. Taps for eight-inch and larger only include the actual connection to the collection system.

(b) *Basic user charges (user fees).* User fees consist of the sum of a fixed fee plus gallonage rate as set from time to time and contained in appendix B.

(c) *Cost of installation of meters.* The cost of installation of meters shall be as set from time to time and contained in appendix B.

Add. 5

(d) *Facility fee.* The facility fee shall be as set from time to time and contained in appendix B. The facility fee will be determined as specified in section 56-312(b); however, the minimum fee will not apply in the following circumstances:

(1) Nonresidential development or unit obtaining a certificate of occupancy where the structure is not new development.

(2) Nonresidential development or unit obtaining a building permit with an estimated construction cost of less than $2,000.00, where the structure is not new development.

(3) Building permits for new development where there is no plumbing in the entire structure. If plumbing is added later, the facility fee for new development will apply.

(e) *Other charges.*

(1) *Administration/inspection fees.* An administration/inspection fee shall be as set from time to time and contained in appendix B. The fee is applicable in the following specific situations (not all inclusive):

    a.    Change in billing options (i.e. flat rate or metered rate).

    b.    Installation of tap by owner as described in section 56-312.

    c.    Service call to test meter accuracy and meter is found to be accurate.

    d.    Discontinue service as described in section 56-282.

(2) *Billing method change.* A fee, as set forth in appendix B, shall be charged for each occurrence when customers request a change in billing method.

(3) *Application fee.* An application fee, as set forth in appendix B, shall be charged for new service.

(4) *Credit card.* A credit card convenience fee, as set forth in appendix B, shall be charged on total amounts of $250.00 or more.

(Code 1978, § 15-124; Ord. of 12-6-1999; Ord. of 4-15-2002; Ord. of 5-20-2002; Ord. of 3-24-2003; Ord. of 5-2-2005, § VI)

West's North Carolina General Statutes Annotated
  Chapter 1. Civil Procedure
    Subchapter II. Limitations
      Article 5. Limitations, Other Than Real Property

N.C.G.S.A. § 1-52

§ 1-52. Three years

Effective: June 20, 2014
Currentness

Within three years an action--

  (1) Upon a contract, obligation or liability arising out of a contract, express or implied, except those mentioned in the preceding sections or in G.S. 1-53(1).

  (1a) Upon the official bond of a public officer.

  (2) Upon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it.

  (3) For trespass upon real property. When the trespass is a continuing one, the action shall be commenced within three years from the original trespass, and not thereafter.

  (4) For taking, detaining, converting or injuring any goods or chattels, including action for their specific recovery.

  (5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated.

  (6) Against the sureties of any executor, administrator, collector or guardian on the official bond of their principal; within three years after the breach thereof complained of.

  (7) Against bail; within three years after judgment against the principal; but bail may discharge himself by a surrender of the principal, at any time before final judgment against the bail.

  (8) For fees due to a clerk, sheriff or other officer, by the judgment of a court; within three years from the entry of the judgment, or the issuing of the last execution thereon.

  (9) For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

(10) Repealed by Session Laws 1977, c. 886, s. 1.

(11) For the recovery of any amount under and by virtue of the provisions of the Fair Labor Standards Act of 1938 and amendments thereto, said act being an act of Congress.

(12) Upon a claim for loss covered by an insurance policy that is subject to the three-year limitation contained in G.S. 58-44-16.

(13) Against a public officer, for a trespass, under color of his office.

(14) An action under Chapter 75B of the General Statutes, the action in regard to a continuing violation accrues at the time of the latest violation.

(15) For the recovery of taxes paid as provided in G.S. 105-381.

(16) Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Except as provided in G.S. 130A-26.3, no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

(17) Against a public utility, electric or telephone membership corporation, or a municipality for damages or for compensation for right-of-way or use of any lands for a utility service line or lines to serve one or more customers or members unless an inverse condemnation action or proceeding is commenced within three years after the utility service line has been constructed or by October 1, 1984, whichever is later.

(18) Against any registered land surveyor as defined in G.S. 89C-3(9) or any person acting under his supervision and control for physical damage or economic or monetary loss due to negligence or a deficiency in the performance of surveying or platting as defined in G.S. 1-47(6).

(19) For assault, battery, or false imprisonment.

(20) Upon a liability for a civil penalty, civil assessment, or civil fine imposed pursuant to Chapter 20 of the General Statutes.

## Credits

Amended by Laws 1945, c. 785; Laws 1971, c. 939, § 1; Laws 1975, c. 252, §§ 2, 4; Laws 1977, c. 886, § 1; Laws 1977, c. 916, § 2; Laws 1977, c. 946, § 4; Laws 1979, c. 654, § 3; Laws 1981, c. 702; Laws 1981, c. 777, § 4; Laws 1991, c. 268, § 1; Laws 1995 (Reg. Sess., 1996), c. 742, § 1(b), eff. June 21, 1996; S.L. 1997-297, § 2, eff. Oct. 1, 1997; S.L. 2001-175, § 2, eff. Oct. 1, 2001; S.L. 2004-203, § 15(b), eff. Aug. 17, 2004; S.L. 2007-491, § 3, eff. Jan. 1, 2008; S.L. 2009-171, § 5, eff. Jan. 1, 2010; S.L. 2010-129, § 6, eff. July 21, 2010; S.L. 2014-17, § 2, eff. June 20, 2014.

Add. 8

.

Notes of Decisions (956)

N.C.G.S.A. § 1-52, NC ST § 1-52

The statutes and Constitution are current through Chapters 1-117, excluding 100, 102, 107, 109, 110, and 115, of the 2014 Regular Session of the General Assembly.

**End of Document**                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

West's North Carolina General Statutes Annotated
   Chapter 1. Civil Procedure
      Subchapter II. Limitations
         Article 5. Limitations, Other Than Real Property

N.C.G.S.A. § 1-53

§ 1-53. Two years

Effective: July 28, 2008
Currentness

Within two years--

(1) An action against a local unit of government upon a contract, obligation or liability arising out of a contract, express or implied. Unless otherwise provided by law, if the preceding sentence of this subsection would bar commencement of a cause of action arising out of a contract to improve real property: (i) such an action may be brought no later than 90 days after substantial completion, provided proper notice of the claim has been given if required by contract, or (ii) if prior to substantial completion the contract was terminated by either party, such an action may be brought no later than 90 days after the date of termination of the contract. As used in this subdivision, "substantial completion" has the same meaning as in G.S. 1-50(a)(5)c. This subdivision shall not apply to actions based upon bonds, notes and interest coupons or when a different period of limitation is prescribed by this Article.

(2) An action to recover the penalty for usury, including an action regarding the financing of usurious points, usurious fees, or other usurious charges; the two-year period shall accrue with each payment made and accepted on the loan.

(3) The forfeiture of all interest for usury.

(4) Actions for damages on account of the death of a person caused by the wrongful act, neglect or fault of another under G.S. 28A-18-2; the cause of action shall not accrue until the date of death. Provided that, whenever the decedent would have been barred, had he lived, from bringing an action for bodily harm because of the provisions of G.S. 1-15(c) or 1-52(16), no action for his death may be brought.

**Credits**
Amended by Laws 1945, c. 774, § 1; Laws 1951, c. 246, § 2; Laws 1979, c. 654, § 3; Laws 1981, c. 777, § 3; S.L. 2007-351, § 1, eff. Aug. 16, 2007; S.L. 2008-139, § 1, eff. July 28, 2008.

Notes of Decisions (126)

N.C.G.S.A. § 1-53, NC ST § 1-53
The statutes and Constitution are current through Chapters 1-117, excluding 100, 102, 107, 109, 110, and 115, of the 2014 Regular Session of the General Assembly.

Add. 10

§ 1-53. Two years, NC ST § 1-53

**End of Document**                                        © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Add. 11

West's North Carolina General Statutes Annotated
  Chapter 6. Liability for Court Costs
    Article 3. Civil Actions and Proceedings

N.C.G.S.A. § 6-21.7

§ 6-21.7. Attorneys' fees; cities or counties acting outside the scope of their authority

Effective: October 1, 2011
Currentness

In any action in which a city or county is a party, upon a finding by the court that the city or county acted outside the scope of its legal authority, the court may award reasonable attorneys' fees and costs to the party who successfully challenged the city's or county's action, provided that if the court also finds that the city's or county's action was an abuse of its discretion, the court shall award attorneys' fees and costs.

**Credits**
Added by S.L. 2011-299, § 1, eff. Oct. 1, 2011.

Notes of Decisions (2)

N.C.G.S.A. § 6-21.7, NC ST § 6-21.7
The statutes and Constitution are current through Chapters 1-117, excluding 100, 102, 107, 109, 110, and 115, of the 2014 Regular Session of the General Assembly.

**End of Document**                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

§ 153A-276. Financing public enterprises, NC ST § 153A-276

West's North Carolina General Statutes Annotated
  Chapter 153A. Counties
    Article 15. Public Enterprises
      Part 1. General Provisions

N.C.G.S.A. § 153A-276

§ 153A-276. Financing public enterprises

Currentness

Subject to the restrictions, limitations, procedures, and regulations otherwise provided by law, a county may finance the cost of a public enterprise by levying taxes, borrowing money, and appropriating any other revenues, and by accepting and administering gifts and grants from any source.

**Credits**
Added by Laws 1973, c. 822, § 1.

Notes of Decisions (5)

N.C.G.S.A. § 153A-276, NC ST § 153A-276
The statutes and Constitution are current through Chapters 1-117, excluding 100, 102, 107, 109, 110, and 115, of the 2014 Regular Session of the General Assembly.

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.

West's North Carolina General Statutes Annotated
  Chapter 162A. Water and Sewer Systems (Refs & Annos)
    Article 1. Water and Sewer Authorities (Refs & Annos)

N.C.G.S.A. § 162A-9

§ 162A-9. Rates and charges; notice; contracts for water or services; deposits; delinquent charges

Effective: February 1, 2011
Currentness

(a) An authority may establish and revise a schedule of rates, fees, and other charges for the use of and for the services furnished or to be furnished by any water system or sewer system or parts thereof owned or operated by the authority. The rates, fees, and charges established under this subsection are not subject to supervision or regulation by any bureau, board, commission, or other agency of the State or of any political subdivision.

Before an authority sets or revises rates, fees, or other charges for stormwater management programs and structural or natural stormwater and drainage system service, the authority shall hold a public hearing on the matter. At least seven days before the hearing, the authority shall publish notice of the public hearing in a newspaper having general circulation in the area. An authority may impose rates, fees, or other charges for stormwater management programs and stormwater and drainage system service on a person even though the person has not entered into a contract to receive the service.

Rates, fees, and charges shall be fixed and revised so that the revenues of the authority, together with any other available funds, will be sufficient at all times:

  (1) To pay the cost of maintaining, repairing, and operating the systems or parts thereof owned or operated by the authority, including reserves for such purposes, and including provision for the payment of principal of and interest on indebtedness of a political subdivision or of political subdivisions which payment shall have been assumed by the authority, and

  (2) To pay the principal of and the interest on all bonds issued by the authority under the provisions of this Article as the same shall become due and payable and to provide reserves therefor.

The fees established under this subsection must be made applicable throughout the service area. Schedules of rates, fees, charges, and penalties for providing stormwater management programs and structural and natural stormwater and drainage system service may vary according to whether the property served is residential, commercial, or industrial property, the property's use, the size of the property, the area of impervious surfaces on the property, the quantity and quality of the runoff from the property, the characteristics of the watershed into which stormwater from the property drains, and other factors that affect the stormwater drainage system. Rates, fees, and charges imposed under this subsection for stormwater management programs and stormwater and drainage system service may not exceed the authority's cost of providing a stormwater management program and a structural and natural stormwater and drainage system. The authority's cost of providing a stormwater management program and a structural and natural stormwater and drainage system includes any costs necessary to assure that all aspects of stormwater quality and quantity are managed in accordance with federal and State laws, regulations, and rules.

No stormwater utility fee may be levied under this subsection whenever two or more units of local government operate separate stormwater management programs or separate structural and natural stormwater and drainage system services in the same area within a county. However, two or more units of local government may allocate among themselves the functions, duties, powers, and responsibilities for jointly operating a stormwater management program and structural and natural stormwater and drainage

Add. 14

system service in the same area within a county, provided that only one unit may levy a fee for the service within the joint service area. For purposes of this subsection, a unit of local government shall include a regional authority providing stormwater management programs and structural and natural stormwater and drainage system services.

(a1) An authority shall provide notice to interested parties of the imposition of or increase in rates, fees, and charges under subsection (a) of this section applicable solely to the construction of development subject to Part 2 of Article 19 of Chapter 160A or Part 2 of Article 18 of Chapter 153A of the General Statutes at least seven days prior to the first meeting where the imposition of or increase in the rates, fees, and charges is on the agenda for consideration. The authority shall employ at least two of the following means of communication in order to provide the notice required by this subsection:

    (1) Notice of the meeting in a prominent location on a Web site managed or maintained by the authority.

    (2) Notice of the meeting in a prominent physical location, including, but not limited to, the authority's headquarters or any government building, library, or courthouse located within the authority's service area.

    (3) Notice of the meeting by electronic mail to a list of interested parties that is created by the authority for the purpose of notification as required by this section.

    (4) Notice of the meeting by facsimile to a list of interested parties that is created by the authority for the purpose of notification as required by this section.

(a2) If an authority does not maintain its own Web site, it may employ the notice option provided by subdivision (1) of subsection (a1) of this section by submitting a request to a county or counties in which the authority is located to post such notice in a prominent location on a Web site that is maintained by the county or counties. Any authority that elects to provide such notice shall make its request to the county or counties at least 15 days prior to the date of the first meeting where the imposition of or increase in the fees or charges is on the agenda for consideration.

(a3) During the consideration of the imposition of or increase in rates, fees, or charges under this subsection, the authority shall permit a period of public comment.

(a4) The notice requirements in subsection (a1) of this section shall not apply if the imposition of or increase in rates, fees, and charges is contained in a budget filed in accordance with the requirements of G.S. 159-12.

(b) Notwithstanding any of the foregoing provisions of this section, the authority may enter into contracts relating to the collection, treatment or disposal of sewage or the purchase or sale of water which shall not be subject to revision except in accordance with their terms.

(c) In order to insure the payment of such rates, fees and charges as the same shall become due and payable, the authority may do the following in addition to exercising any other remedies which it may have:

(1) Require reasonable advance deposits to be made with it to be subject to application to the payment of delinquent rates, fees and charges.

(2) At the expiration of 30 days after any rates, fees and charges become delinquent, discontinue supplying water or the services and facilities of any water system or sewer system of the authority.

(3) Specify the order in which partial payments are to be applied when a bill covers more than one service.

**Credits**

Added by Laws 1955, c. 1195, § 8. Amended by Laws 1971, c. 892, § 1; Laws 1989 (Reg. Sess., 1990), c. 1004, § 45; Laws 1991, c. 591, § 4; Laws 1991 (Reg. Sess., 1992), c. 1007, § 47; S.L. 2000-70, § 7, eff. July 8, 1991; S.L. 2009-436, § 4, eff. Sept. 1, 2009; S.L. 2010-180, § 11(d), eff. Feb. 1, 2011.

Notes of Decisions (3)

N.C.G.S.A. § 162A-9, NC ST § 162A-9
The statutes and Constitution are current through Chapters 1-117, excluding 100, 102, 107, 109, 110, and 115, of the 2014 Regular Session of the General Assembly.

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

§ 162A-88. District is a municipal corporation, NC ST § 162A-88

West's North Carolina General Statutes Annotated
   Chapter 162A. Water and Sewer Systems (Refs & Annos)
     Article 6. County Water and Sewer Districts (Refs & Annos)

N.C.G.S.A. § 162A-88

§ 162A-88. District is a municipal corporation

Effective: June 24, 2011
Currentness

The inhabitants of a county water and sewer district created pursuant to this Article are a body corporate and politic by the name specified by the board of commissioners. Under that name they are vested with all the property and rights of property belonging to the corporation; have perpetual succession; may sue and be sued; may contract and be contracted with; may acquire and hold any property, real and personal, devised, sold, or in any manner conveyed, dedicated to, or otherwise acquired by them, and from time to time may hold, invest, sell, or dispose of the same; may have a common seal and alter and renew it at will; may establish, revise and collect rates, fees or other charges and penalties for the use of or the services furnished or to be furnished by any sanitary sewer system, water system or sanitary sewer and water system of the district; and may exercise those powers conferred on them by this Article.

**Credits**

Added by Laws 1977, c. 466, § 1. Amended by Laws 1979, c. 624, § 5; S.L. 2011-284, § 124, eff. June 24, 2011.

Notes of Decisions (3)

N.C.G.S.A. § 162A-88, NC ST § 162A-88
The statutes and Constitution are current through Chapters 1-117, excluding 100, 102, 107, 109, 110, and 115, of the 2014 Regular Session of the General Assembly.

**End of Document**                              © 2014 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,546*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>November 26, 2014</u>      <u>*/s/ Jeremy M. Wilson*</u>
                                         *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 26th day of November, 2014 I caused this Brief of Appellants and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Bradley Andrew Coxe
HODGES & COXE, PC
3907-100 Wrightsville Avenue
Wilimington, NC 28503
(910) 772-1678
bcoxe@hc-lawfirm.com

*Counsel for Appellee*

I further certify that on this 26th day of November, 2014, I caused the required copies of the Brief of Appellants and Joint Appendix to be hand filed with the Clerk of the Court and a Sealed Volume of the Joint Appendix to be served, via electronic mail, upon counsel for the Appellee, at the above address.

/s/ Jeremy M. Wilson
*Counsel for Appellants*